IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RYAN MARSHALL LODYGOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:02-CV-767-WKW |
| ) | (WO) |
| MONTGOMERY COUNTY ) | |
| COMMISSION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This action is presently before the Court on defendant Sheriff D.T. Marshall's ("Sheriff Marshall") Rule 12(b)(6) Motion to Dismiss the Plaintiff's Third Amended Complaint. (Doc. # 38.) The Plaintiff's Third Amended Complaint was filed after previous orders of the Court addressing pleading deficiencies. (Docs. # 25 and 35.) For the reasons set forth below, the motion is due to be granted in part and denied in part.

**I. FACTS AND PROCEDURAL HISTORY**

The allegations in the Third Amended Complaint set forth the following facts: On July 6, 2000, Ryan Marshall Lodygowski ("Plaintiff") was arrested and taken to the Montgomery County Jail ("Jail") where he was held as a pretrial detainee. During his detention, and due to overcrowding, Plaintiff was placed in the recreation room in the Jail with assorted other detainees and inmates, who were not segregated based on their proclivity for violence, gang affiliations or reasons for their confinement. The following day, July 7, 2000, Plaintiff was attacked and gang raped by inmates in the recreation room. Plaintiff alleges that he suffered physical and psychological injuries as a result of the attack.

On July 25, 2002, Plaintiff filed suit against the Montgomery County Commission; Sheriff Marshall, Sheriff of Montgomery County, in his official and individual capacities; Larry Haverland (hereinafter "Haverland"), Montgomery County Chief Jailer/Director, in his official and individual capacities, and various fictitious defendants.  On October 23, 2003, defendant Haverland, the fictitious defendants, the punitive damage claims against the Montgomery County Commission and the official capacity claims against Sheriff Marshall were dismissed by the Court. (Doc. # 25) Plaintiff has had difficulty pleading the case, and is now operating under his Third Amended Complaint.  Contending that he was assaulted and gang raped as a result of defendants' deliberate indifference to a substantial risk of serious harm that existed at the Jail,  Plaintiff seeks compensatory and punitive damages.

## II.  MOTION TO DISMISS STANDARD

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted).  In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and reasonable inferences drawn from those facts, and will view them in a light most favorable to the nonmoving party.  *Hishon*, 467 U.S. at 73; *see also Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).  Ordinarily, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).  However, in cases brought

under 42 U.S.C. § 1983 against sheriffs in Alabama, when qualified immunity is an issue, the threshold is high. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001), *implicitly modified by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity.").

### III. DISCUSSION

Sheriff Marshall is sued in his individual capacity in two claims—a state law claim for negligence and a federal civil rights claim under 42 U.S.C. § 1983. Sheriff Marshall has raised the qualified immunity defense. The Court will address each of the claims and the qualified immunity defense in turn.

*A.     Negligence Claim*

Plaintiff's state law claim of negligence against Sheriff Marshall is due to be dismissed under the familiar sovereign immunity standards which apply to sheriffs in Alabama under Article I, §14 of the Constitution of Alabama (1901) and the Eleventh Amendment of the Constitution of the United States. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("[U]nder Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit . . ." on state law claims.). Sheriff Marshall's motion to dismiss as to the state law claim of negligence is therefore due to be granted.

*B.     Section 1983 Claim*

Plaintiff's second cause of action is a claim against Sheriff Marshall in his individual capacity under 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment right to due process. "Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state

law committed an act that deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). Under established Eleventh Circuit law, this claim is subject to a heightened pleading requirement and must be pled with "some specificity." *GJR Investments*, 132 F.3d at 1367. To satisfy this standard, Plaintiff must plead facts supporting the following elements:

1. A substantial risk of serious harm to the Plaintiff existed in the Jail at the time of the assault, in the subjective knowledge of Sheriff Marshall;

2. Sheriff Marshall's deliberate indifference to that risk (knowingly or recklessly disregarding that risk by failing to take reasonable measures to abate it);

3. Causation (a link between the allegedly indifferent acts and omissions, and the risk of violence; and a link between the risk of violence and injury to the Plaintiff); and

4. Personal involvement of Sheriff Marshall in the acts or omissions.

*See Hale*, 50 F.3d at 1582; *see also LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993).

Applying the heightened pleading standard to the alleged constitutional violation, the Court finds the following allegations advanced by the Plaintiff in the Third Amended Complaint: at the time of the sexual assault on the Plaintiff, the Jail was overcrowded with state prisoners, county prisoners, and pretrial detainees; the prisoners were forced to sleep in the recreation room and not placed in cells; violent offenders were not segregated from nonviolent offenders; members of gangs were not separated; jailers failed to reasonably monitor the Plaintiff; Sheriff Marshall was aware of the overcrowding and dangerous conditions; Sheriff Marshall did not take reasonable action to relieve the overcrowding; the Jail was understaffed and unable to provide adequate security and supervision; the Jail was not properly monitored by either equipment or personnel; and Sheriff Marshall was the chief policymaker for the Jail. Mindful that this is the 12(b)(6) pleading stage, and

4

viewing the allegations in the light most favorable to the Plaintiff, each of the four elements of a § 1983 cause of action will be discussed separately.

Overcrowding has been held to contribute to a substantial risk of serious harm to inmates in *Hale, LaMarca,*[1] *Hayes v. Edwards*, 547 F.2d 1291 (5th Cir. 1977) and *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974).[2] This risk violates the Eighth Amendment[3] requirement that inmates be furnished with basic human needs, one of which is "reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 30 (1993). In *Marsh,* the Eleventh Circuit enumerated a list of conditions which, when taken as a whole, present an objectively substantial risk of serious harm, including the risk of inmate-on-inmate attack: no segregation of violent from nonviolent inmates, or pretrial detainees from convicted criminals; periodic overcrowding; understaffing; no lock-down of prisoners in their cells; and cells not visually inspected. *Marsh*, 268 F.3d at 1029. Plaintiff alleges all five of these conditions found by the *Marsh* court to result in a substantial risk to inmates. Plaintiff alleges that Sheriff Marshall had knowledge of the overcrowded conditions creating a risk of violence, citing the Sheriff's alleged attempts to secure additional financing for the Jail, and a known increase in injuries to inmates from jail violence. Taking the Plaintiff's allegations as a whole, this Court concludes that he has therefore sufficiently pled the first element of a constitutional violation.

Deliberate indifference is the second element of a § 1983 violation. "A prison official's

---

[1] *LaMarca* specifically identified *sexual* assault as a consequence of overcrowding. *LaMarca,* 995 F.2d at 1539.

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[3] Though the Complaint alleges a Fourteenth Amendment violation, the claim may be properly analyzed under the Eighth Amendment. "[S]tates may not impose on pretrial detainees conditions that would violate a convicted prisoner's Eighth Amendment rights." *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985).

deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh*, 268 F.3d at 1028. Moreover, a violation occurs "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond reasonably to the risk.'" *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). Deliberate indifference may be inferred from the fact that the risk of harm is obvious. *Farmer*, 511 U.S. at 842. Moreover, a common proof of deliberate indifference is evidence that the offending official did nothing in view of the known risk of harm. *Hale*, 50 F.3d at 1583; *LaMarca*, 995 F.2d at 1535. Plaintiff pleads that Sheriff Marshall did not take reasonable action to relieve the overcrowding, which this Court takes to include the failure to alleviate the conditions listed above. A jury could find that Sheriff Marshall "failed to take reasonable measures to abate" a known risk of harm "if the evidence showed that he knew of ways to reduce the harm but knowingly declined to act, or that he knew of ways to reduce the harm but recklessly declined to act." *Hale*, 50 F.3d at 1583. Further, the Plaintiff has alleged that Sheriff Marshall refused to assign sufficient staff to adequately monitor the inmates and failed to take action to relieve overcrowding. The omissions and his failure to act, if proven, would satisfy the deliberate indifference element.

Causation, the third element of this cause of action, has two links: the indifference – risk of violence link, and the risk of violence – injury link. The court in *Hale* explained:

> If a plaintiff establishes a causal link between the defendant's acts or omissions and the infirm condition, the defendant is precluded from contending that the unconstitutional condition was not at least a proximate cause of . . . injuries that arose from that condition. This is not to say that a plaintiff need not show a causal link between the constitutionally infirm condition and the alleged injuries. Rather, the finding that a prison condition offends the Eighth Amendment presupposes the distinct likelihood that the harm threatened will result. The wrong in Eighth Amendment cases is the deliberate

6

> indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries, here the injuries brought about by the assaults.

*Hale*, 50 F.3d at 1584 (citing *LaMarca*, 995 F.2d at 1536).

Mindful that this discussion concerns pleaded facts, not proven facts, Plaintiff has met the third element by pleading causal links between overcrowding, the indifference or inaction of Sheriff Marshall, and Plaintiff's gang rape. If Plaintiff can prove the first two elements, risk and deliberate indifference, both causal links will be in play under *LaMarca* and *Hale*. The pleading of the Third Amendment Complaint in this regard is sufficient.

Plaintiff has also sufficiently alleged the final element, personal involvement of Sheriff Marshall in the acts or omissions. Plaintiff alleges that Sheriff Marshall had actual knowledge—that is, he was objectively knowledgeable, not merely subjectively knowledgeable—of the overcrowding and consequential risk. According to the Plaintiff, "Defendant Marshall new [sic] of the overcrowding and refused to assign sufficient staff to adequately monitor the inmates resulting in the gang rape of the Plaintiff." (Third Am. Compl. ¶ 20.) Plaintiff also alleged that Sheriff Marshall is responsible for the administration of the Jail (*Id.* ¶ 3), that Sheriff Marshall was the chief policymaker for the Jail (*Id.* ¶ 18), and that Sheriff Marshall was "deliberately indifferent to the known "extremely dangerous condition being caused by the overcrowding." (*Id.* ¶ 19.) Allegedly, Sheriff Marshall knew of an increased number of injured inmates, in that he requested additional funds to transport injured "patients" to local hospitals. (*Id.* ¶ 19.) Because of the level of knowledge alleged and the totality of the circumstances allegedly existing at the Jail on the occasion of this gang rape, the Third Amended Complaint meets the test requiring allegations of Sheriff Marshall's personal involvement.

Accordingly, the Court finds that the Plaintiff has met the required heightened pleading

7

standard.

C.     *Qualified Immunity*

The analysis of qualified immunity begins with the obvious: gang rape of a pretrial detainee in a county jail is a violation of the victim's right to "reasonable safety," *Helling,* 509 U.S. at 30, and to be free from sexually motivated physical assaults. *See Romero v. City of Clanton*, 220 F. Supp. 2d 1313 (M.D. Ala. 2002)*.* The issue is whether the qualified immunity granted sheriffs by law relieves Sheriff Marshall of any personal responsibility for the injuries to the Plaintiff.

The qualified immunity defense requires an analysis distinct from that of the alleged constitutional violation. It is possible for Plaintiff to adequately plead a constitutional violation but still lose on qualified immunity. *See Marsh*, 268 F.3d at 1030. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While qualified immunity is typically addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss. *See Marsh*, 268 F.3d at 1030. *See also St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). To overcome a Rule 12(b)(6) motion based on the defense of qualified immunity, Plaintiff must allege conditions, acts or omissions that, in the light of the already clearly established law at the time of the incident, obviously amounted to or resulted in cruel and unusual punishment under the Eighth Amendment.[4] *Marsh*, 268 F.3d at 1028.

---

[4] The same analysis applies to due process claims under the Fourteenth Amendment for a pretrial detainee. *Hamm*, 774 F.2d at 1573-74.

Qualified immunity analysis consists of three distinct steps: first, the public official must have been acting within the scope of his or her discretionary authority; second, the official's acts must have violated a constitutional right of the Plaintiff; and third, that constitutional right must have been clearly established at the time of the violation. It is not disputed that Sheriff Marshall was acting within his discretionary authority to establish and carry out policies at the jail, thereby meeting the first step of the analysis. The second step is satisfied in that Plaintiff has adequately alleged, as set forth above, a violation of his constitutional rights under the Fourteenth Amendment. The final step, that this constitutional right was clearly established at the time of the violation, requires detailed analysis of factual allegations.[5]

Plaintiff alleges that extremely dangerous conditions caused by overcrowding existed in the Jail on the occasion of his gang rape. Consequently, says the Plaintiff, there was no segregation of pretrial detainees, gang members, or violent offenders; monitoring of prisoners was inadequate; and many prisoners, including the Plaintiff, slept in the recreation room, not in cells. Though not pled artfully, Plaintiff has alleged specific conditions and inactions which, he says, resulted in his being gang raped while in the custody of Sheriff Marshall. Unreasonably failing to take action to ensure the safety of inmates, when conditions exist that the sheriff knew or should have known posed a serious risk of harm to inmates – including the risk of sexual assault – is a violation of a clearly established constitutional right. *See LaMarca*, 995 F.2d at 1539. Overcrowding is one such condition, but there are others that apply here. The Court can look to the totality of the circumstances to find a constitutional violation. *Hayes v. Edwards*, 547 F.2d 1206, 1211 (5th Cir.

---

[5] Judging from paragraphs 21, 22 and 23 of the Third Amended Complaint, Plaintiff believes that the "clearly established law" that Sheriff Marshall violated somehow arose from *Ex Parte Glover*, 801 So. 2d 1 (Ala. 2001). This Court is unable to make a specific connection between *Ex Parte Glover* and the instant case.

1977) (overcrowding; lack of security; crowded dormitories and insufficient cell space; failure to segregate dangerous prisoners from the rest of the inmate population);[6] *Gates v. Collier*, 501 F.2d 1291, 1308-09 (5th Cir. 1974) (inmates not classified according to severity of their offense; intermingling of inmates convicted of aggravated violent crimes with those who are first offenders or convicted of nonviolent crimes; failure to provide adequate protection against physical assaults and abuse from other inmates; excessive numbers of inmates in barracks without adequate classification or supervision; overcrowding of dormitory barracks; lack of supervision by guards); *LaMarca*, 995 F.2d at 1539 (lack of adequate patrols; violent and lawless prison conditions creating the background and climate which preordain homosexual rapes and other inmate assaults).

Sheriff Marshall insists that his specific acts of personal involvement in the deprivation must be shown in the pleadings. (Def.'s Br. at 6.) Citing *Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990), and *Braddy v. Florida Dep't of Labor & Employment Sec.,* 133 F.3d 797 (11th Cir. 1998), Sheriff Marshall argues that "[i]f the complaint does not allege that a defendant personally participated in the alleged constitutional violation, it should demonstrate an affirmative causal connection between a defendant's acts and the alleged constitutional deprivation in order to state a cause of action under § 1983." *Brown* and *Braddy* are both employment discrimination cases which, true enough, discuss the defense of qualified immunity in that context. However, they address "causal connection" in a discussion of supervisory liability in an employment setting—hardly *apropos* to a gang rape in a county jail. They are also summary judgment cases, not 12(b)(6) motions to dismiss cases, which means there was actual evidence in the record with which to test the

---

[6] "Each factor separately, *i.e.*, overcrowding dormitory barracks, lack of classification according to severity of offense, untrained inmates with weapons, lack of supervision by civilian guards, absence of a procedure for confiscation of weapons, may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violated of the Eighth Amendment . . . ." *Id.*

10

pleadings. These cases and this argument are unpersuasive.

Moreover, this Court and the Eleventh Circuit have found Alabama sheriffs to be proper party defendants in jail assault cases when no specific acts of personal involvement were alleged. For instance, in *Marsh*, the Eleventh Circuit held that the Butler County sheriff was not entitled to qualified immunity at the Rule 12(b)(6) stage for a prisoner assault, despite a lack of pleading the sheriff's *affirmative* acts of involvement. *Id.* Granted, the sheriff's *omissions* in *Marsh*, as recounted *supra*, were glaring. Likewise, in *Hale* (a pretrial detainee summary judgment case), the Circuit Court discussed *actual evidence* with which to test the pleadings, holding that the plaintiff "was required to produce evidence that, with knowledge of the substantial risk of serious harm, [the sheriff] knowingly or recklessly 'disregarded that risk by failing to take reasonable measures to abate it.'" *Hale*, 50 F.3d at 1583 (citing *Farmer*, 114 S. Ct. at 1984; *LaMarca*, 995 F.2d at 1535). This Court does not read the cases to require pleading that a sheriff participated in the assault, only that his knowledge of conditions in his realm rises to a level sufficient to make him culpable for the violations in a personal sense. With the issue being "fair notice" to the defendant sheriff in qualified immunity cases, these and other cases hold that a sheriff cannot ignore obvious conditions which are known to lead to violence in and among the inmate population and shield himself behind qualified immunity. The dangerous conditions themselves give fair notice.

Sheriff Marshall also cites *Bradley* and *Brown* as authority to criticize the Plaintiff for not alleging a widespread history of abuse. "An isolated incident is not sufficient to establish a widespread history of abuse." (Def.'s Br. at 9.) That may or may not be so in the employment discrimination context, but this particular issue, in the context of jail assaults, has been directly addressed in this Circuit. In *Marsh*, the district court, while recognizing the troubling conditions of the Butler County, Alabama jail, nevertheless failed to conclude that a clearly established right

11

had been violated because of the absence of an allegation of a pattern of past serious injuries to prisoners at the jail. In reviewing the district court ruling, the Eleventh Circuit held that allegations of past serious injuries were not required if other conditions of confinement clearly established a risk of serious harm to inmates. *Marsh*, 268 F.3d at 1033. The Circuit Court noted that "an Eighth Amendment violation can arise from unsafe conditions of confinement even if no assault or similar physical injury has occurred." *Id*. at 1034 (quoting *Helling*, 113 S. Ct. at 2841). Sheriff Marshall's argument on this point is not persuasive.

It cannot seriously be contended that the conditions alleged by Plaintiff did not result in the violation of clearly established law of which any reasonably informed sheriff would have been aware. Therefore, at this stage of the case, Sheriff Marshall is not entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Sheriff Marshall's Motion to Dismiss is GRANTED as to the state law negligence claim and DENIED as to all other claims.

Done this the 3rd day of May, 2006.

/s/  W. Keith  Watkins
UNITED STATES DISTRICT JUDGE